ajc

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CB LODGING, LLC, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | )   **Case No. 08-2310-JAR** |
| | ) |
| I3TEL, LLC, | ) |
| | ) |
| **Defendant.** | ) |
| _____ | ) |

## MEMORANDUM AND ORDER

Plaintiff CB Lodging, LLC filed a Petition against defendant i3tel, LLC ("i3tel") alleging breach of the implied warranty of fitness for a particular purpose and breach of express warranty. Alternatively, plaintiff claims that i3tel breached the contract and its fiduciary duty.  Defendant filed a Motion for Partial Dismissal of Plaintiff's Claims (Doc. 3) pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiff responded, asking the Court to deny the motion or, in the alternative, to grant leave to amend its Petition.  After considering the parties' submissions, the Court denies defendant's motion for partial dismissal, as explained more fully below.

## I.    Background

The following facts are alleged in the Petition and the Court draws all reasonable inferences in favor of plaintiff.  Plaintiff owns and operates a Springhill Suites Hotel ("hotel") in Council Bluffs, Iowa, which is a Marriot International franchise.  In 2006, Barry Brautman, on behalf of plaintiff, sent requests for proposals to various vendors for the installation of a voice over internet protocol ("VOIP") telephone and internet system at the hotel that would meet Marriott International's specifications.  These specifications required a system capable of allowing hotel guests to make outbound calls via VOIP that could be tracked and charged to the

individual guest rooms.

In response, Brautman received proposals from various vendors, including one from i3tel, a company that is owned and managed by Brautman's brother-in-law.  At the time plaintiff was considering i3tel's proposition, i3tel knew that plaintiff required a VOIP system conforming to Marriot International's standards.  Although installation of VOIP systems cost significantly more than traditional telephone systems, i3tel assured plaintiff that lower operating costs would allow them to recoup the additional costs in under two years.

Plaintiff accepted the i3tel proposal in January 2007.  In so doing, plaintiff relied upon i3tel's skill and judgment to select and furnish a suitable system that would conform to Marriot International's standard.  Accordingly, plaintiff paid i3tel $141,300 for the system, prior to the delivery of any system components.  In May 2007, plaintiff agreed to purchase other related components from i3tel for $15,295.42.  i3tel agreed to service the system for six months following the hotel's opening at no additional charge.

Since the hotel opened on May 7, 2007, the plaintiff has experienced substantial problems with the system.  The system has never been capable of tracking or invoicing outbound calls for hotel guests.  The outbound calls are made via traditional phone lines instead of VOIP, preventing any operational cost savings.  Plaintiff made repeated requests to i3tel to repair and support the system in accordance with the specifications.  i3tel advised plaintiff that it cannot and will not support the system.  Plaintiff lost significant revenues from the system's failure to perform according to the specifications.

II.     **Discussion**

Fed. R. Civ. P. 8(a)(2) provides that a complaint must contain "a short and plain

statement of the claim showing that the pleader is entitled to relief."  A complaint must give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.[1]  This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.[2]

Previously, courts found a complaint sufficient "unless it appeared without a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[3]  Under this standard, a wholly conclusory statement of a claim could survive a motion to dismiss as long as there was the possibility that some undisclosed facts would support recovery.[4]

The Supreme Court abrogated the *Gibson* standard in *Bell Atlantic Corp. v. Twombly*, and stated that a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face."[5]  Under the revised standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[6]  "Factual allegations must be enough to raise a right to relief above the speculative level."[7]

The Tenth Circuit recently interpreted the plausibility standard of *Twombly*, shedding

---

[1]*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

[2]*Id.* at 512.

[3]*Gibson*, 355 U.S. at 45-46.

[4]*Bell Atl. Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1968 (2007).

[5]*Id.* at 1974.

[6]*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in the original).

[7]*Twombly*, 127 S. Ct. at 1965.

light on a decision that is "less than pellucid."[8]  The plausibility standard seeks to find a middle

ground between heightened fact pleading and "allowing complaints that are no more than 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action,' which the Court

stated 'will not do.'"[9]  *Twombly* does not change other principles, such as that a court must

accept all allegations as true and may not dismiss on the ground that it appears unlikely the

allegations can be proven.[10]  Instead, "plausibility" refers to the scope of allegations in the

complaint and rejects allegations that "are so general that they encompass a wide swath of

conduct, much of it innocent," thereby weeding out claims that do not have a reasonable

prospect of success as well as informing the defendant of the actual grounds of the claim against

him.[11]  As the Supreme Court explained in *Twombly*: "Without some factual allegation in the

complaint, it is hard to see how a claimant could satisfy the requirement of providing not only

'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."[12]

### A.      Choice of Law Provision

Based on perceived strategic advantages, i3tel urges the Court to examine and enforce a

choice of law provision—one purportedly triggering Missouri state law—for purposes of this

motion to dismiss.  The Court is not inclined to render any such determination at this time.

Generally "a court does not look beyond the face of the complaint when analyzing a Rule

---

[8]*Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008).

[9]*Id.* (quoting *Twombly*, 127 S. Ct. at 1965).

[10]*Id.* (citing *Twombly*, 127 S. Ct. at 1965).

[11]*Id.* at 1247-48.

[12]*Twombly*, 127 S. Ct. at 1965.

12(b)(6) motion."[13]  The actual contract between the parties, with the requisite terms and conditions, is absent from the complaint.  Defendant's attempt to provide a document purporting to show the relevant choice of law provision is insufficient—it is neither attached to plaintiff's petition nor any other document resembling a contract.  The document, which is not the disputed contract, simply stands alone, devoid of any indicia of agreement.  Regardless, for present purposes, it appears the substantive law pertaining to the issues raised by i3tel's Motion to Dismiss is essentially the same in both Kansas and Missouri.

### B.    Breach of the Implied Warranty of Fitness for a Particular Purpose

The Uniform Commercial Code states that an implied warranty of fitness for a particular purpose arises when "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . ."[14]  Instructively, Comment 2 suggests that a "'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business . . . ."[15]

In its Petition, plaintiff alleged that it sought and accepted a proposal for the installation of a VOIP telephone and internet system that would conform to Marriot International's specifications.  Plaintiff was seeking not just a VOIP system (or as i3tel narrowly argues, a mere telephone system), but also one capable of interfacing with an aggregate Marriot International network.

---

[13]*Jamieson v. Vatterott Educ. Ctr., Inc.*, 473 F.Supp.2d 1153, 1159 (D. Kan. 2007).

[14]KAN. STAT. ANN. § 84-2-315; MO. REV. STAT. § 400.2-315.

[15]KAN. STAT. ANN. § 84-2-315 cmt. n.2; MO. REV. STAT. § 400.2-315 cmt. n.2.

i3tel's narrow representation of the allegations fails to persuade the Court away from this inference.  i3tel argues that the alleged facts merely show plaintiff acquired a system for the ordinary purpose of a hotel telephone system; namely to permit phone calls to be made, received, tracked and charged.  In so doing, i3tel cites *International Petroleum Services, Inc. v. S&N Well Services, Inc.* to show that "[w]hen goods are acquired for the ordinary purpose for which the goods are generally used, no implied warranty of fitness for a particular purpose arises."[16]

However, that same case notes that "[a] 'particular purpose' . . . envisages a specific use by the buyer which is peculiar to the nature of his business . . . ."[17]  *International Petroleum Services* involved the sale of oil well servicing equipment where the purchaser simply acquired the items without any intention of using it in a unique manner.[18]  Accordingly, the court held that the goods were purchased for their ordinary purpose and, consequently, no implied warranty of fitness for a particular purpose arose out of the transaction.[19]  The facts alleged in the present case appear significantly different.  In addition to the generic purposes described by i3tel, plaintiff also envisaged a VOIP system capable of interfacing with a uniquely standardized network.  i3tel's assertion that the present Petition simply described an "ordinary purpose" finds support neither in the facts alleged nor the authority cited.

Indeed, the Petition provides that at the time of contracting, i3tel had reason to know that plaintiff required the VOIP system to satisfy unique specifications and that plaintiff was relying

---

[16]639 P.2d 29, 37 (Kan. 1982).

[17]*Id.*

[18]*Id.*

[19]*Id.*

upon i3tel's skill to furnish suitable goods.  Accordingly, upon drawing all reasonable inferences in favor of plaintiff, the circumstances give rise to an implied warranty of fitness for a particular purpose.

### C.     Breach of Contract

Upon reviewing the relevant portion of the Petition (paragraphs 1 through 40) and drawing all reasonable inferences in favor of plaintiff, the Court finds that the plaintiff alleges sufficient facts to state a claim for breach of contract.  Moreover, the alleged facts included in plaintiff's Petition do not amount to the "formulaic recitation of the elements of the cause of action" described by i3tel.  As stated above, plaintiff need not conform to a heightened pleading standard.  To make a submissible case for breach of contract in Missouri, a plaintiff must allege: (1) mutual agreement between parties capable of contracting; (2) mutual obligations arising out of the agreement; (3) valid consideration; (4) part performance by one party; and (5) damages resulting from the breach of contract.[20]  Similarly, in Kansas, the essential elements of a breach of contract claim are: (1) the existence of a contract between the parties; (2) sufficient consideration to support the contract; (3) the plaintiff's performance or willingness to perform in compliance with the contract; (4) the defendant's breach of the contract; and (5) damages to the plaintiff caused by the breach.[21]

In the present case, plaintiff alleges facts capable of satisfying each of the requisite elements.  An agreement was reached between the parties when the plaintiff accepted i3tel's proposal to install a VOIP system that would conform to Marriot International's standards.

---

[20]*Leo Journagan Constr. Co. v. City Utils. of Springfield*, 116 S.W.3d 711, 717 (Mo. Ct. App. 2003).

[21]*Commercial Credit Corp. v. Harris*, 212 Kan. 310, 313, 510 P.2d 1322, 1325 (1973).

Mutual obligations arose out of that agreement; namely plaintiff's obligation to pay and i3tel's obligation to deliver and install a conforming VOIP system.  Valid consideration existed in the form of plaintiff's aggregate payment in the amount of $156,595.42.  i3tel partly performed its obligation by installing a VOIP system, but not one appropriately conformed to Marriot International's standards as required.  Finally, damages from this breach, in the form of lost revenue, resulted from the system's failure to perform according to the specifications.  Therefore, under either the Missouri or Kansas standards, plaintiff pleads sufficient facts to state a claim that is plausible on its face.

Moreover, this Court is not persuaded by i3tel's argument that, by not including the specific terms of the alleged contract, the plaintiff necessarily failed the pleading standard.  Indeed, in its Reply Memorandum, i3tel boldly declares—without identifying its authority—that "a litigant claiming breach of contract must . . . [state] the terms of the contract."  This Court simply finds no such limiting language in either the pleading standard jurisprudence or relevant state law.  In fact, even if Missouri or Kansas law *did* demand such a requirement, this Court would still not be persuaded.  "Pleading is governed by Rule 8 of the Federal Rules of Civil Procedure, not by State procedural requirements."[22]  Therefore, "[f]ederal law does not require [p]laintiff to recite the contract terms verbatim or to attach a copy of the contract to the complaint."[23]  Accordingly, this Court denies the motion to dismiss.

### D.        Breach of Fiduciary Duty

Drawing all reasonable inferences in favor of plaintiff, this Court finds the facts alleged

---

[22]*Securimetrics, Inc. v. Hartford Cas. Ins. Co.*, No. C 0500917CW, 2005 WL 1712008, at *2 (N.D. Cal Jul. 21, 2005) (applying California state law).

[23]*Id.*

in the relevant portions of the Petition (paragraphs 1 through 47) sufficient to state a claim for breach of fiduciary duty.  Under Missouri law, a plaintiff seeking to establish a claim for breach of fiduciary duty must show: (1) the existence of fiduciary duty, (2) a breach of that duty, (3) causation, and (4) damages.[24]  i3tel does not contest the final three elements.  Rather, it focuses on the first, arguing it never entered into a fiduciary relationship with the plaintiff.  Accordingly, the Court's analysis is limited to this element.  In Missouri, a plaintiff seeking to demonstrate the existence of a fiduciary relationship must allege the following:

> (1) as between the parties, one must be subservient to the dominant mind and will of the other as a result of . . . ignorance; (2) things of value which are the property of the subservient [entity] must be possessed . . . by the dominant party; (3) there must be a surrender of independence by the subservient party to the dominant party; (4) there must be an automatic . . . manipulation of the actions of the subservient party by the dominant party; and (5) there must be a showing that the subservient party places a trust and confidence in the dominant party.[25]

Plaintiff pleads sufficient facts to show a fiduciary relationship existed between itself and i3tel.  Plaintiff placed itself in a subservient role to i3tel for the task of selecting a suitable VOIP system that would conform to Marriot International's standards.  Here, the Court will infer plaintiff was ignorant of the technical specifications inherent to such systems and that it believed i3tel possessed the requisite expertise.  i3tel was to select the appropriate VOIP system, which would be the property of plaintiff.  Plainly, this system constituted a thing of value.  Based upon

---

[24]*See Preferred Physicians Mut. Mgmt. Group v. Preferred Physicians Mut. Risk Retention*, 918 S.W.2d 805, 811 (Mo. Ct. App. 1996).

[25]*Chmieleski v. City Prods. Corp.*, 660 S.W.2d 275, 294 (Mo. Ct. App. 1983).

9

i3tel's expertise, the plaintiff surrendered some independence, at least as far as its purchase selections.  Likewise, this Court can infer that i3tel automatically manipulated the plaintiff's actions, because the plaintiff would presumably purchase whatever system i3tel selected. Finally, from the facts already described, it appears the plaintiff placed considerable trust in i3tel to provide not only a VOIP system, but one that would conform to Marriot International specifications.  Thus, under Missouri law, the plaintiff satisfies the pleading standard on this issue.

Similarly, the Kansas Supreme Court identified the following factors as creating a fiduciary relationship: (1) a special confidence is placed by one entity in another; (2) a duty to act primarily for another's benefit; (3) a party possessing and exercising influence over another; (4) superiority of one of party over the other; and (5) the property, interest, or authority of the other is placed in the charge of the fiduciary.[26]

Applying the facts alleged, plaintiff placed a unique confidence in i3tel—specifically i3tel's expertise and ability to select and provide a conforming VOIP system.  In selecting said system, i3tel allegedly had a duty to act primarily for plaintiff's benefit.  i3tel allegedly possessed and exercised influence over plaintiff by driving plaintiff's selection process.  i3tel enjoyed superiority over plaintiff in evaluating, selecting, and installing an appropriate VOIP system.  Finally, plaintiff's authority to select a VOIP system for itself was placed in the charge of i3tel.  Therefore, the facts alleged demonstrate that, even under Kansas law, the plaintiff's Petition pleads sufficient facts to state a claim for breach of fiduciary duty that is plausible on its face.

---

[26]*See Denison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan. 1982).

Accepting its allegations as true, plaintiff established more than just a vendor-customer business relationship with i3tel.  The plaintiff deliberately contracted for not just a VOIP system, but for a technically proficient provider to select and install one that would conform to a particular set of specifications.  Although i3tel correctly asserts that the existence of a business relationship alone does not give rise to a fiduciary relationship, the allegations in the Petition plainly describe more when viewed in the light most favorable to plaintiff.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Partial Dismissal of Plaintiff's Claims (Doc. 3) is **denied**.

**IT IS SO ORDERED**.

Dated this  20th  day of October 2008.

**S/ Julie A. Robinson**
**Julie A. Robinson**
**United States District Judge**